UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

<u>TRANSMITTAL SHEET FOR OPINIONS FOR POSTING</u>

| | |
|---|---|
| *Will this opinion be published?* | Yes |
| *Bankruptcy Caption:* | In re Gayety Candy Co., Inc. |
| *Bankruptcy No.:* | 18bk32437 |
| *Adversary Caption:* | David P. Liebowitz, as Chapter 7 Trustee for the Estate of Gayety Candy Co., Inc. v. Kalamata Capital LLC, Factor Funding LLC, Sable Distributors, CAN Capital, Inc., Aureolin Services, Sound Garden, Capital One NA successor to Capital One FSB; United States of America – Department of Treasury – Internal Revenue Service; and State of Illinois Department of Revenue |
| *Adversary No.:* | 20ap00010 |
| *Date of Issuance:* | February 05, 2021 |
| *Judge:* | Timothy A. Barnes |
| <u>*Appearances*</u>: | |
| *Attorney for Chapter 7 Trustee:* | David P. Leibowitz, Law Offices of David P. Liebowitz, LLC, Chicago, IL |
| *Attorney for the United States of America:* | Ali Gadelhak, United States Department of Justice, Washington, DC |
| *Attorneys for the Illinois Department of Revenue:* | Robert O. Lynch and James D. Newbold, Office of the Illinois Attorney General, Chicago, IL |

<u>*Synopsis*</u>:

Upon the crossing motions for summary judgment brought by the Internal Revenue Service and the Illinois Department of Revenue to determine priority of liens under section 506, the IRS and IDOR each assert that no genuine issue of material fact exists necessitating a trial on the complaint. The trustee, as plaintiff in the matter, concurs and, but for the existence of an undetermined motion to vacate a previous court order upon which this issue turns, the court agrees.

In considering each of the summary judgment motions under the standards applicable thereto and presuming first that the order in question remains in force, held:

(i) As to the assets not segregated under the sale order, the IRS has met the standards for summary judgment under Fed. R. Civ. P. 56 for judgment in its favor by demonstrating that it has a senior secured claim to the proceeds of the section 363(f) sale of the Debtor's assets, which secured claim is senior in priority to the State of Illinois's inchoate interest in those same assets. Such assets must be distributed to the IRS in the manner set forth in section 725 of the Bankruptcy Code. Such senior, secured interest of the IRS would extend to all assets of the sale if not for the terms of the sale order; and

(ii) As to the assets segregated under the sale order, neither the IRS nor IDOR has met the standards for summary judgment under Fed. R. Civ. P. 56 for judgment in its favor, but summary judgment is possible on the undisputed facts before the court. The express terms of the sale order provide that the IRS's senior secured claim does not attach to such proceeds. The sale order does not, however, attach an interest in favor of the State of Illinois to such proceeds. The State of Illinois failed to show that any right of adequate protection of its inchoate interest exists. As such, there is no claim against such assets of the nature set forth in section 725 of the Bankruptcy Code and the segregated proceeds must be distributed to creditors in the manner set forth in section 726 of the Bankruptcy Code.

Given the pending challenge to the sale order's stripping of the IRS's lien against the assets, the court holds judgment in this matter until the motion to vacate is heard and determined. Upon and concurrent with such a determination, judgment will be entered here in the manner described above, if and as changed by the court's determination of the motion to vacate. As such judgment will conclude all affirmative claims for relief in the adversary proceeding, the adversary proceeding will be concluded thereby.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re:<br><br>Gayety Candy Co., Inc.,<br><br>    Debtor.<br>———————————————————— | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 18bk32437<br><br>Chapter 7 |
| David P. Liebowitz, as Chapter 7 Trustee for the Estate of Gayety Candy Co., Inc.,<br><br>    Plaintiff,<br><br>v.<br><br>Kalamata Capital Group LLC, Factor Funding LLC, Sable Distributors, CAN Capital, Inc., Aureolin Services, Sound Garden, Capital One NA successor to Capital One FSB; United States of America – Department of Treasury – Internal Revenue Service; and State of Illinois Department of Revenue,<br><br>    Defendants.<br>———————————————————— | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Adv. No. 20ap00010<br><br>Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

<u>MEMORANDUM DECISION</u>

These matters come on for consideration on the Defendant United States of America's Motion for Summary Judgment [Adv. Dkt. No. 31][1] (the "<u>IRS Motion</u>") and the Motion of Illinois Departemt [sic] of Revenue for Partial Summary Judgment [Adv. Dkt. No. 32] (the "<u>IDOR Motion</u>" and collectively with the IRS Motion, the "<u>Motions</u>").  In each of the Motions, the respective movant seeks summary judgment in its favor on the Complaint to Determine Validity, Priority, and Extent of Liens [Adv. Dkt. No. 1] (the "<u>Complaint</u>") brought by the plaintiff, David P. Liebowitz, chapter 7 trustee (the "<u>Trustee</u>") for the bankruptcy estate of Gayety Candy Co., Inc. (the "<u>Debtor</u>").

In the Complaint, the Trustee seeks a determination from the court under section 506(a) of the Bankruptcy Code (defined below) of the nature, extent, validity and priority of claims against

---

[1]    References to docket entries in this adversary proceeding will be noted as "Adv. Dkt. No. ___." References to docket entries in the underlying bankruptcy case, *In re Gayety Candy Co., Inc.*, Case No. 18bk32437 (Bankr. N.D. Ill. filed November 19, 2018) (Barnes, J.), will be noted as "Dkt. No. ___."

assets of the Debtor's chapter 7 bankruptcy estate.  As the Trustee has sold all the assets of the estate, *see* Order Authorizing Chapter 7 Trustee to Sell Certain Assets Free and Clear of Liens Pursuant to 11 U.S.C. § 363(b) and (f), and Shortening Notice [Dkt. No. 25] (the "Sale Order"), what remains is a determination of how such lien claims entitle the respective claimants, if at all, to claim against the proceeds of the sale.  Alongside its Motion, the Internal Revenue Service (the "IRS") also seeks vacation or modification of the Sale Order to the extent the Sale Order affords the Illinois Department of Revenue ("IDOR") priority over the IRS to which IDOR is not entitled.  *See* Creditor United States' Motion for Relief (if Necessary) from Arguable Priority Ruling in Sale Order [Dkt. No. 43] (the "Motion to Vacate").

Aside from the IRS and IDOR, all other defendants have been defaulted.  [Adv. Dkt. Nos. 20, 30].  What remains is Count I of the Complaint, under which the Trustee seeks a determination of the extent and priority of the IRS's lien claim, and Count VII of the Complaint, under which the Trustee seeks a determination of the extent and priority of IDOR's inchoate interest in the property.  The IRS and IDOR, by apparent agreement, each seek to resolve the crossing claims via summary judgment and thus bring the respective Motions.[2]  The Trustee has voiced support for the IRS Motion, but otherwise states that he simply awaits a determination by the court of the competing claims.

The Motions turn in part on the Seventh Circuit's ruling in *Ill. Dep't of Revenue v. Hanmi Bank*, 895 F.3d 465 (7th Cir. 2018), *reh'g denied* (Aug. 24, 2018), and the cases underlying the same.  The Motions have been fully briefed and were argued before the court on August 31, 2020 (the "Hearing").  At a status hearing on November 31, 2020, the parties agreed that a resolution of the IRS Motion in favor of the IRS would moot the Motion to Vacate and conclude the relief sought in the Complaint.

This Memorandum Decision constitutes the court's statement on the record for granting or denying the Motions.[3]  For the reasons more fully set forth below, upon review of the parties' respective filings and after having heard the arguments of the parties at the Hearing, the court finds that, but for the yet to be determined Motion to Vacate, there exists no genuine issue as to any material fact.

In considering each of the Motions under the standards applicable thereto and presuming first that the order in question remains in force, held: (i) As to the assets not segregated under the Sale Order, the IRS has met the standards for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, made applicable here by Rule 7056 of the Federal Rules of Bankruptcy

---

[2]      IDOR's Motion incorrectly notes that these are not the entirety of issues that remain in the adversary.  IDOR suggests that the Trustee has also sought to subordinate IDOR's tax liens to estate administrative expenses.  *See* Complaint at Count VII, ¶ 54; IDOR Mot., at p. 2 ("The only issue raised by the pleadings that IDOR finds is not ripe for determination is the Trustee's request to subordinate tax liens to chapter 7 administrative expenses under § 724(b) and/or in the case of IDOR's successor liability interest, surcharge it under § 506(c).").  The Complaint does not, however, plead for affirmative relief on such theory.  One does not claim affirmative relief through a reservation of rights, as was apparently done here.  There is, thus, no request of this nature before the court and partial summary judgment is not necessary.

[3]      On January 11, 2021, the court conducted a final hearing on this matter, at which hearing the court announced the decision contained herein.  To the extent that this Memorandum Decision differs in any way from the announced decision, the Memorandum Decision governs.

Procedure,[4] for judgment in its favor by demonstrating that it has a senior secured claim to the proceeds of the section 363(f) sale of the Debtor's assets, which secured claim is senior in priority to the State of Illinois's inchoate interest in those same assets; and (ii) As to the assets segregated under the Sale Order, neither the IRS nor IDOR has met the standards for summary judgment under Civil Rule 56 for judgment in its favor, but summary judgment is possible on the undisputed facts before the court. The express terms of the Sale Order provide that the IRS's senior secured claim does not attach to such proceeds. The Sale Order does not, however, attach an interest in favor of the State of Illinois to such proceeds. The State of Illinois failed to show that any right of adequate protection exists for its inchoate interest. As such, there is no claim against such assets of the nature set forth in section 725 of the Bankruptcy Code, and the segregated proceeds must be distributed to creditors in the manner set forth in section 726 of the Bankruptcy Code.

Should the Sale Order's stripping of the IRS's lien against the sale proceeds be vacated, the IRS will have met the standards for summary judgment under Civil Rule 56 for judgment in its favor by demonstrating that it has a senior secured claim to all of the proceeds of the section 363(f) sale of the Debtor's assets which secured claim is senior in priority to the State of Illinois's inchoate interest in those same assets.

As the result here turns on a motion yet to be resolved, the court holds judgment in this matter until the Motion to Vacate is heard and determined. Upon such a determination, judgment will be entered here concurrent with the court's determination of the Motion to Vacate. As such judgment will conclude all affirmative claims for relief in the adversary proceeding, the adversary proceeding will be concluded thereby.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred has statutory authority to enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the bankruptcy court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1), (c). Absent consent, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after

---

[4]    The Federal Rules of Civil Procedure will be referred to herein individually as "Civil Rule ___." The Federal Rules of Bankruptcy Procedure will be referred to herein individually as "Bankruptcy Rule ___."

3

considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy judge must also have constitutional authority to hear and determine a matter. *Stern v. Marshall,* 564 U.S. 464 (2011). Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court hearing and determining the matter. *See, e.g., Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

A proceeding to determine the validity, extent, or priority of liens pursuant to section 506 of the Bankruptcy Code is a matter arising under the Bankruptcy Code and is a core proceeding. 28 U.S.C. § 157(b)(2)(K); *Matrix IV, Inc. v. American Nat. Bank and Tr. Co. of Chi.*, 649 F.3d 539, 550 (7th Cir. 2011) ("'core' proceedings . . . include 'determinations of the validity, extent and priority of liens'"). It follows that a motion for summary judgment under Civil Rule 56, made applicable by Bankruptcy Rule 7056 to adversary proceedings, in such a matter is also a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) & (2); *see also Maxwell v. U.S. (In re Horizon Grp. Mgmt., LLC)*, 617 B.R. 581, 585 (Bankr. N.D. Ill. 2020) (Barnes, J.).

In addition to being a core proceeding, each of the foregoing "stems from the bankruptcy itself." *Stern*, 564 U.S. at 499. Therefore, the court also has constitutional authority to enter final orders in this matter.

More importantly, no party has contested the jurisdiction or authority of this court in entering final orders in this matter. Accordingly, the court has the jurisdiction, statutory authority and constitutional authority to hear and determine both the Motions and the Motion to Vacate.

BACKGROUND

The following background reflects the undisputed facts contained in the submissions of the parties and the uncontroverted facts contained in the Defendant United States' Statement of Material Facts Not in Dispute [Adv. Dkt. No. 31-3] (the "IRS Statement of Facts") and the Statement of Illinois Departemt [sic] of Revenue of Undisputed Material Facts in Support of Its Motion for Summary Judgment [Adv. Dkt. No. 32-2] (the "IDOR Statement of Facts").[5] Bankr. N.D. Ill. R. 7056-2.

On November 19, 2018, the Debtor filed a voluntary petition under chapter 7 [Dkt. No. 1]. The Debtor was engaged in the business of manufacturing and selling products such as candy, ice cream and other confections. [Dkt. No. 21]. Later, on February 20, 2019, the court entered the Sale

---

[5]    In determining the Motions, the court is not stating findings of fact or conclusions of law because Civil Rule 52(a)(3), made applicable by Bankruptcy Rule 7052, does not so require when ruling on a motion for summary judgment. Fed. R. Civ. P. 52(a)(3); *Devices Liquidation Tr. v. KMT Wireless, LLC (In re Pers. Commc'ns Devices, LLC)*, 588 B.R. 661, 662 (Bankr. E.D.N.Y. 2018). Instead, as noted above, this Memorandum Decision constitutes the court's statement on the record for granting or denying the Motions. *See* Fed. R. Civ. P. 56(a) (made applicable by Fed. R. Bankr. P. 7056).

4

Order granting the Trustee's motion to sell estate property pursuant to section 363(b) and (f). Thereafter, the Trustee sold substantially all the assets of the Debtor's estate for $52,250.00 (the "Proceeds").  IDOR Stmt. of Facts, at ¶ 10; *see also* Trustee's Report of Sale [Dkt. No. 26].

The Sale Order was drafted and submitted by the Trustee and contains several provisions that have an effect here.  First, in the precatory paragraph, the Sale Order states specifically that the motion upon which it was predicated sought a sale "free and clear of any and all liens, claims, interests and encumbrances with such liens, claims, interest and encumbrances to attach to the proceeds of the sale" and further, directly in the ordering provisions thereof, that "[t]he Trustee is authorized … to sell the Assets, free and clear of liens, claims, interests and encumbrances, pursuant to 11 U.S.C. § 363(b) and (f)."  Sale Order, at ¶ 2.

Further, the Sale Order segregated $33,563.76 of the Proceeds (the "Segregated Proceeds" and the Proceeds less the Segregated Proceeds, the "Remaining Proceeds").  Paragraph 4 of the Sale Order states specifically that:

> The Trustee shall designate and separate the sum of $33,563.76 from the sale proceeds for the full satisfaction of the successor liability claims that have been asserted by the Illinois Department of Revenue and the Illinois Department of Employment Security, with all other liens on the Assets to attach to the remaining proceeds of the sale as provided by 11 U.S.C. § 363(f).

On January 7, 2020, nearly one year later after the Sale Order was entered, the Trustee filed the Complaint initiating this adversary proceeding (the "Adversary Proceeding").  The Complaint contained nine counts, each seeking a determination of a lien claimant's rights to the Proceeds. Except for the IRS and the IDOR, all other lien claims were determined to be zero by default judgment.  Default Judgment [Adv. Dkt. No. 20]; Judgment Order [Adv. Dkt. No. 30].  Only the IRS and IDOR claims remain at issue.

The IRS and IDOR both assert that they are entitled to all or a portion of the Proceeds. The IRS argues that IDOR is not entitled to any of the Proceeds, including the Segregated Proceeds. On the other hand, IDOR argues that it has a valid first and prior right to the $33,563.76 that comprises the Segregated Proceeds.

The Trustee filed his Joinder to the United States' Motion for Summary Judgment [Adv. Dkt. No. 36] (the "Trustee's Joinder"), adopting the arguments of the IRS Motion, but also arguing that any payment of the Proceeds are subordinate to administrative claims in the main bankruptcy case.  Trustee's Joinder, at ¶ 9.  Based on this latter argument, the IDOR Motion seeks only partial summary judgment, arguing that the Trustee's asserted right to subordinate claims to allowed administrative expenses pursuant to section 724 of the Bankruptcy Code was not properly before the court as it exceeded the scope of the Complaint.  IDOR Mot., at pp. 4, 23.  IDOR asserts that the Complaint only seeks determination on the priority and extent of liens.[6]

---

[6]    As discussed above and below, the court agrees with this assertion.  In the Complaint, the Trustee "reserve[d] all rights of the estate to subordinate the [IDOR] lien pursuant to section 724(b)."  Compl., at ¶ 54.  No such "reservation" was made as against the IRS lien.  Compl., at ¶¶ 9-12.  While the propriety of

The claim of the IRS is based on several tax liens (the "IRS Liens") against the Debtor, the earliest of which was filed on February 1, 2013, and the most recent filed on December 14, 2016. IRS Stmt. of Facts, at ¶ 10.  The IRS Liens secure taxes and prepetition interest totaling approximately $178,000.00 (the "IRS Claim").  *Id.*; *see also* Compl., at ¶ 11; Response of Illinois Departemt [sic] of Revenue to Statement of Undisputed Facts Filed by the United States, at ¶ 1 [Adv. Dkt. No. 39-2] (the "IDOR Response") ("IDOR does not dispute the facts set forth" in the IRS Statement of Facts).

IDOR, in turn, asserts on behalf of the State of Illinois claims that stem from unpaid taxes due for prepetition sales, withholding and corporate income/replacement taxes that total $35,562.75 (the "State of Illinois Claim").  IDOR Stmt. of Facts, at ¶ 11.  The portion of the State of Illinois Claim for sales tax is based on sales tax returns for the months of May through October 2018.  *Id.* at ¶ 12.  The portion of the State of Illinois Claim that is based on taxes not withheld by the Debtor is for the second, third, and fourth quarters of 2018.  *Id.* at ¶ 13.  Finally, the last portion of the State of Illinois Claim is based on the Debtor's unpaid income tax returns for the years 2017 and 2018. *Id.* at ¶ 14.[7]  The State of Illinois Claim is not secured by any recorded liens against the Debtor.  IRS Stmt. of Facts, at ¶ 11.  The IRS has not conceded the validity, extent, or priority of the State of Illinois Claim.

PROCEDURAL HISTORY

In taking up the Motions, the court has considered the arguments of the parties at the Hearing and has reviewed and considered the following filings relating to the Motions:

(1)    The Sale Order;

(2)    The IRS Motion;

(3)    The IDOR Motion;

(4)    The Trustee's Joinder;

(5)    The IDOR Response;

(6)    Defendant United States of America's Response to Illinois Department of Revenue's Motion for Partial Summary Judgment [Adv. Dkt. No. 40] (the "IRS Response"); and

(7)    Transcript of Oral Arguments, Aug. 31, 2020 [Adv. Dkt. No. 47] (the "Transcript").

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing.  Though these items do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter.  *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146 at *2 (N.D. Ill. Mar. 8, 1993)

---

such a reservation is certainly one that can be questioned, the question of surcharging any of the Proceeds is not presently before the court.

[7]    The Illinois Department of Employment Security subsequently waived a *de minimis* claim against the Debtor.  IDOR Stmt. of Facts, at ¶ 15.

(authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same). The court has also considered the procedural history and previous court filings in this case, as is discussed below in detail.

APPLICABLE LAW

A.      Summary Judgment Under Fed. R. Civ. P. 56

Summary judgment is appropriate if: first, on the pleadings, moving papers and affidavits, or other evidence submitted therewith there is no genuine issue of material fact; and second, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e) (made applicable to the Adversary Proceeding by Bankruptcy Rule 7056); *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018). The burden of proof on summary judgment rests squarely on the movant. *EEOC v. Watkins Motor Lines, Inc.*, 553 F.3d 593, 596 (7th Cir. 2009); *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 921–22 (7th Cir. 2007).

The purpose of summary judgment is to enable the early disposition of purely legal issues (or the early legal disposition of an entire matter) where there is no evidentiary dispute necessitating a trial. *Weber-Stephen Prods. LLC v. Sears Holding Corp.*, Case No. 13cv01686, 2015 WL 9304343, at *4 (N.D. Ill. Dec. 22, 2015); *Newman v. Assoc. Bank, Nat'l Ass'n (In re World Mktg. Chi., LLC)*, 574 B.R. 670, 677 (Bankr. N.D. Ill. 2017) (Barnes, J.).

The movant must, with citation to materials in the record, demonstrate that no genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1); *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in original); *World Mktg.*, 574 B.R. at 677.

To be genuinely at issue, the disputed fact must be outcome determinative under governing law. *Sylvester v. Martin (In re Martin)*, 130 B.R. 930, 937 (Bankr. N.D. Ill. 1991) (Schmetterer, J.) (*citing Anderson*, 477 U.S. at 248). Put another way, a genuine issue of material fact exists if, after a resolution of the disputed fact by the factfinder (but not before), "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 258; *Dunn*, 880 F.3d at 905. The court makes this determination under the standard that would be used at trial. *Valley Liquors, Inc. v. Renfield Imps., Ltd.*, 822 F.2d 656, 659 (7th Cir. 1987) (*citing Anderson*, 477 U.S. at 252). When a material fact or set of facts gives rise to competing, but reasonable, inferences, then there is a genuine issue that precludes summary judgment. *Coles v. City of Chi.,* 361 F. Supp. 2d 740, 741–42 (N.D. Ill. 2005).

The court in considering summary judgment motions construes the evidence and all reasonable inferences in favor of the non-moving party. *Durable Mfg. Co. v. U.S. Dep't of Labor*, 578 F.3d 497, 501 (7th Cir. 2009). When crossing motions for summary judgment are filed, the court must consider each motion independently, and in so doing make all inferences in favor of the party against whom the motion under consideration is made. *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) ("With cross-motions, our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made." (citing to

*Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)); *Finsel v. Hartshorn*, 200 F. Supp. 2d 960, 966 (C.D. Ill. 2002), *aff'd sub nom. Finsel v. Cruppenink*, 326 F.3d 903 (7th Cir. 2003) (same).

> The fact that both parties have moved for summary judgment, and thus both parties have simultaneously argued that there is no genuine issue of fact, does not establish that a trial is unnecessary or empower this court to enter judgment as it sees fit. Summary judgment may be granted only if one of the moving parties is entitled to judgment as a matter of law on the basis of the material facts not in dispute. The proper procedure is to assess the merits of each summary judgment motion independently.

*Finsel*, 200 F. Supp. at 966 (citations omitted); *see also M. Snower & Co. v. U.S.*, 140 F.2d 367, 369 (7th Cir. 1944) (rejecting the contention that crossing summary judgment motions transform an issue into a question of law to be decided on the facts on file, and instead placing the burden on the court in such a situation to determine independently whether the pleadings present a genuine issue regarding a material fact, concluding no summary judgment on the disputed facts should be granted and the case should proceed to trial).

Further, Civil Rule 56 "has long authorized partial grants of summary judgment … [and t]he 2010 revisions to [Civil] Rule 56 make this unmistakably clear. *See* Fed. R. Civ. P. 56(a), cmt. 2010 Amendment ('The first sentence is added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense.')." *Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 849 (7th Cir. 2019) (internal citation omitted).

On a motion for summary judgment on a particular claim or defense, the court may grant summary judgment with respect to certain elements of such claim or defense, even if the court does not grant all of the relief requested. Fed. R. Civ. P. 56(a), (g); *U.S. Bank Nat'l Ass'n v. Builders Bank*, Case No. 08-C-5648, 2011 WL 1103875, at *6 (N.D. Ill. Mar. 25, 2011); *Cord v. Jaspan Schlesinger Hoffman, LLP (In re Monahan Ford Corp. of Flushing)*, 390 B.R. 493, 501 (Bankr. E.D.N.Y. 2008) ("Although ultimate judgment cannot be awarded unless all elements are established, nothing prevents the court, under [Civil] Rule 56(a), from awarding summary judgment on the first two elements of the claim, where, as here, none of the material facts necessary to establish those elements are in dispute.").

B.      Determination of Validity, Priority and Extent of Liens Pursuant to 11 U.S.C. § 506(a)

There is little question that, but for the ability to surcharge reasonable, necessary costs and expenses of preserving or disposing of property of the estate, *see* 11 U.S.C. § 506(c), secured claims are afforded a priority over all other claims in bankruptcy. *Compare* 11 U.S.C. § 725 (payment of claims secured by interest of property "before final distribution of property of the estate under section 726 of this title") *with* 11 U.S.C. § 726 (payment of all remaining claims). Thus, a party with an interest in estate property should be entitled to take first as against all proceeds of the sale of such property. Here, that relative order was mainly preserved by the express wording of the Sale Order. *See also* 11 U.S.C. § 361(2).

As noted above, such interests are generally created and governed by state law. *Butner v. U.S.*, 440 U.S. 48, 55 (1979). "[B]ankruptcy law respects that right unless a federal interest requires a

8

separate result." *In re Elk Grove Vill. Petroleum*, 510 B.R. 594, 600 (Bankr. N.D. Ill. 2014) (Barnes, J.) (*citing Butner*, 440 U.S. at 55) ("Elk Grove I"), *rev'd on other grounds sub. nom. Ill. Dept. of Revenue v. Elk Grove Vill. Petroleum, Inc.*, 541 B.R. 673 (N.D. Ill. 2015) ("Elk Grove II"), *as revised*, case no. 14C5072, 2015 WL 8481961 (N.D. Ill. Dec. 9, 2015) ("Elk Grove III"), *decision on remand,* 562 B.R. 708 (Bankr. N.D. Ill. 2016) ("Elk Grove IV"), *aff'd Ill. Dep't of Revenue v. Hanmi Bank*, 895 F.3d 465 (7th Cir. 2018). In determining the validity and priority of a purportedly secured claim, a federal interest does require a separate result, as such a determination is governed by federal law. 11 U.S.C. § 506(a). This is because the interests in question are asserted as against the property of the bankruptcy estate, an entity created and governed by federal law. *See* 11 U.S.C. § 541; *Bd. of Trade of City of Chi. v. Johnson*, 264 U.S. 1, 10 (1924).

Section 506(a) of the Bankruptcy Code provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest … is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property … and is an unsecured claim to the extent that the value of such creditor's interest … is less than the amount of such allowed claim." 11 U.S.C. § 506(a). Section 506(a) "separates loans into secured and unsecured portions." *Ryan v. U.S. (In re Ryan)*, 725 F.3d 623, 624 (7th Cir. 2013) (citation omitted). "[Section] 506(a) allows the bifurcation of the rights of holders of secured claims, rather than the modification of a secured claim. It does not change the rights immediately allowing the permanent modification of a secured claim to unsecured status, as strip off or avoidance occurs at discharge." *In re Fenn*, 428 B.R. 494, 501 (Bankr. N.D. Ill. 2010) (Cox, J.).

An action to determine the validity, priority or extent of liens may be brought as an adversary proceeding. Fed. R. Bankr. P. 7001(2) ("The following are adversary proceedings . . . a proceeding to determine the validity, priority, or extent of a lien or other interest in property…"). Therefore, the Complaint filed by the Trustee was properly brought under the Bankruptcy Rules. Contrary to the assertion in the IRS Response on pages 2–3, however, an adversary proceeding is not absolutely required to determine the validity, extent or priority of a lien. This is so because Bankruptcy Rule 7001(2) is not the sole means for determining a lien's extent or priority. *E.g.,* 11 U.S.C. § 363(f), 11 U.S.C. § 510(c); *see also* 11 U.S.C. § 724. If another section of the Bankruptcy Code can accomplish a determination of a lien's relative priority, the parties need not resort to an adversary proceeding. *See Marsh v. U.S. Dep't of Hous. & Urban Dev. (In re Marsh)*, 475 B.R. 892, n. 5 (N.D. Ill. 2012) ("It is unclear whether it is appropriate to strip off a wholly unsecured mortgage lien in an adversary proceeding, rather than at time of confirmation. *Compare In re Black,* Case No. 01–11520, 2002 WL 31719957 (Bankr. N.D. Ind. Sept. 23, 2002) (allowing strip off of wholly unsecured mortgage lien during confirmation process), *with Waters v. The Money Store (In re Waters),* 276 B.R. 879 (Bankr. N.D. Ill. 2002) (allowing strip off of wholly unsecured mortgage lien during an adversary proceeding)." *But see Brisco v. U.S. (In re Brisco)*, 486 B.R. 422, 434–35 (Bankr. N.D. Ill. 2013) (Schmetterer, J.) ("Rule 7001(2) requires an Adversary proceeding to determine the 'validity, priority, or extent of a lien or other interest in property' and to obtain a declaratory judgment relating to an applicable lien interest.").

## DISCUSSION

The matter before the court is preceded by several cases, including a combined appeal to the Seventh Circuit, concerning IDOR's right to assert successor liability after its interest has been stripped in a sale under section 363 of the Bankruptcy Code. *See Ill. Dep't of Revenue v. Hanmi Bank*, 895 F.3d 465 (7th Cir. 2018) (hereafter "Hanmi Bank") (Seventh Circuit held that the bankruptcy

9

court did not err in valuing IDOR's interest in section 363 sale proceeds at zero). In determining the matter, the parties have asked the court to revisit arguments asserted in the litigation leading up to the *Hanmi Bank* decision, including whether IDOR's right to assert successor liability against a purchaser is an "interest" and whether that interest is entitled to adequate protection under section 363(e).

Setting aside those issues for the moment, the question presented by the Motions is whether and to what extent IDOR can assert a right to section 363 "free and clear" sale proceeds that is higher in priority than secured claims and thus not aligned with the priority scheme of the Bankruptcy Code.

The court will first consider the IRS's argument challenging the applicability of 35 ILL. COMP. STAT. 5/902(d) (the "Illinois Income Tax Act") and 35 ILL. COMP. STAT. 129/5j (the "Retailer's Occupation Tax Act" and together with the Illinois Income Tax Act, the "Bulk Sales Provisions").[8] Following that, the court will consider the nature and extent of the IRS's and, as asserted by IDOR, the State of Illinois's respective claims, including the State's right to adequate protection for its claim, and the legal effect of paragraph 4 in the Sale Order, if any. The court then turns to the heart of the issue: the relative priorities of the IRS Claim and the State of Illinois Claim. Finally, the court briefly discusses the administrative expense claims priority issue reserved from summary judgment by IDOR and asserted in the Trustee's Joinder.

A.      The Application of the Illinois Bulk Provisions to Bankruptcy Sales

        1.      *Bulk Sales Provisions Apply to Bankruptcy Sales*

As a threshold matter, the court must consider the IRS's contention that the Bulk Sales Provisions do not apply to bankruptcy sales. IRS Mot., at p. 8. For context, the Bulk Sales Provisions of the Illinois Income Tax Act apply "[i]f *any taxpayer*, outside the usual course of his business, sells or transfers the major part" of specific types of assets. 35 ILCS 5/902(d) (emphasis added). The IRS contends that a plain meaning interpretation of the Bulk Sales Provisions (the language of the Retailer's Occupation Tax Act's Bulk Sales Provision is nearly identical) indicates application is limited to the "taxpayer" only and the Bulk Sales Provisions do not contemplate a bulk sale by a bankruptcy trustee. IRS Mot., at p. 9. On the other hand, IDOR argues that the Bulk Sales Provisions do apply to bankruptcy sales. IDOR Mot., at p. 18.

Considered in a vacuum, the IRS's argument has merit. Assuming a debtor is the taxpayer in question, a trustee in a chapter 7 case is neither the taxpayer nor a representative thereof. *See, e.g.,* 11 U.S.C. § 704 (setting forth the duties of a chapter 7 trustee). Instead, a chapter 7 trustee acts on behalf of the bankruptcy estate created upon the commencement of the bankruptcy proceeding. 11 U.S.C. § 323(a); *see also* U.S. Dept. of Just., Handbook for Chapter 7 Trs., p. 4-2. In so doing, "[a] trustee in bankruptcy represents the interests of creditors," *In re Luster*, 981 F.2d 277, 279 (7th Cir.

---

[8]      For continuity, consistency and ease of appeal that is likely to follow, the court adopts all of the Seventh Circuit's relevant terms and definitions from *Hanmi Bank*, 895 F.3d at 467 ("Illinois statutes we shall refer to as the Bulk Sales Provisions."). This includes defining "ILCS" as the short citation to the Illinois Compiled Statutes.

1992), not the debtor, and owes primary fiduciary duties to them.  *In re Salzer*, 52 F.3d 708, 712 (7th Cir. 1996).

Support for this conclusion exists in another case related in principle to *Hanmi Bank*, wherein Judge Lynch noted that it was "not clear that the [Bulk Sales Provisions] would apply to a sale by a bankruptcy trustee."  *BMO Harris Bank, N.A. v. Vista Mktg, Grp., Ltd.* (*In re Vista Mktg. Grp., Ltd.*), 548 B.R. 502, 520 (Bankr. N.D. Ill. 2016) (Lynch, J.).  The *Vista Marketing* case was one of the panoply of cases considered by the Seventh Circuit under the *Hanmi Bank* rubric.

While in many ways *Vista Marketing* mirrors this court's concerns, the focus here should be on *Hanmi Bank* as the most recent and controlling law on point.  The result is that the court does not take up this issue in a vacuum, but in light of the Seventh Circuit's conduct and statements in *Hanmi Bank*.  There the application of the Bulk Sales Provisions to all such bankruptcy sales was treated as axiomatic.  *See generally In re Naperville Theater, LLC*, 2016 WL 930659 (N.D. Ill. Mar. 10, 2016); Elk Grove II, 541 B.R. 673.

Further, in *Hanmi Bank*, the Seventh Circuit stated that "[t]he Bulk Sales Provisions themselves do not exempt sales taking place in the course of bankruptcy proceedings, and *although the trustee may not literally be the 'taxpayer' to which these provisions refer, he certainly acts on the taxpayer's behalf.*"  895 F.3d at 474 n.4 (emphasis added).  While the inclusion of this statement in a footnote may be taken as an indication that it is *dicta* and not central to the Seventh Circuit's ruling, the statement is directly on point and appears, despite the statutes and case law to the contrary, to conclusively find the trustee and the debtor to be synonymous for these purposes.

As several of this court's decisions underlying *Hanmi Bank* applied the Bulk Sale Provisions to bankruptcy sales, in light of the Seventh Circuit's express statements on the appeal thereof, the court is compelled to apply the provisions to the matter at bar.  The IRS's argument in this regard is rejected.

2.    *Selective Application of Bulk Sales Provisions Contradicts the Goals of the Bankruptcy Code*

Next, the court must consider the IRS's argument, also adopted in the Trustee's Joinder at ¶ 8, that the Supremacy Clause of the United States Constitution preempts the Bulk Sales Provisions.  U.S. Const., art. VI, § 1, cl. 2.  This court had previously raised the issue *sua sponte*, perhaps giving rise to the IRS's argument.  Elk Grove IV, 562 B.R. at 708 (although beyond the scope of remand, the court questioned "whether IDOR has run afoul of the principles of federal preemption" in applying Bulk Sales Provisions to bankruptcy sales).  There this court stated that "bankruptcy law respects [state law] rights unless a federal interest requires a separate result."  Elk Grove I, 510 B.R. at 600 (*citing Butner*, 440 U.S. at 55).

The concern raised by the court in Elk Grove IV was that the State of Illinois selectively applies the Bulk Sales Provisions.  As was demonstrated in Elk Grove IV, IDOR does not apply successor liability under the Bulk Sales Provisions for foreclosure sales conducted in Illinois state courts.  This, as the court stated then, is "problematic at best."  Elk Grove IV, 562 B.R. at 715 n.7.

"One of the primary purposes of the [federal bankruptcy system] is to 'relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.' . . . Local rules subversive of

11

that result cannot be accepted as controlling the action of a federal court." *Local Loan Co. v. Hunt*, 292 U.S. 234, 245 (1934) (internal citations omitted); *see also Freshman v. Atkins*, 269 U.S. 121, 122–23 (1925) (The primary objective of bankruptcy proceedings is "discharge of the bankrupt from his debts."). Thus a state or local government, acting as a creditor in a bankruptcy matter, should be no more able to legislate preferential treatment of its claims than would other, nongovernmental creditors. Courts must balance the right of the states to define the nature of a property right with the prohibition against attempting to subvert the federal preeminence of the bankruptcy laws.

The selective enforcement of the Bulk Sales Provisions in federal bankruptcy sales but not state foreclosure sales comes in direct conflict with one of the primary purposes of bankruptcy—the fresh start. IDOR permits creditors in state-governed foreclosure matters to take free of the Bulk Sales Provisions while assessing such charges to creditors in a federal bankruptcy matter. Were it not this court's conclusion, as discussed below, that IDOR may not use section 363(e) of the Bankruptcy Code to alter the priority of creditors in bankruptcy, the court would be inclined to take up this issue here.

However, it is unclear here, as it was in *Hanmi Bank*, if IDOR seeks to assess taxes to the sale of the assets of the Debtor or against the purchaser. Instead, it appears that IDOR seeks to elevate the State of Illinois's existing tax claims against the Debtor to superpriority status by way of stripping the State's right to recover such claims against the purchaser as provided in the successor liability terms of the Bulk Sales Provisions.

The IRS argues that, under the reasoning stated in *In re White Motor Credit Corp.*, the court should hold that the Bankruptcy Code preempts otherwise valid successor liability claims. 75 B.R. 944, 950–951 (Bankr. N.D. Ohio 1987). The Seventh Circuit, however, has specifically rejected such a "blanket rule" and noted that "it is not clear why an intervening bankruptcy proceeding, in particular, should have a *per se* preclusive effect" on a creditor's chance to pursue successor liability. *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.* (*In re Tasemkin Inc.*), 59 F.3d 48, 50–51 (7th Cir. 1995). The Bulk Sales Provisions are not void of application simply by virtue of a bankruptcy petition.

As discussed below, taken as a whole, the federal interest applicable here, as expressed in the policy goals of the Bankruptcy Code, does not require the court to reach the issue of federal preemption. The reason is twofold. First, "IDOR's power to compel a purchaser to reserve a portion of the proceeds for [IDOR]'s benefit does not isolate the reserved funds from the claims of other creditors." *Hanmi Bank*, 895 F.3d at 475 (*citing Bjork v. U. S.*, 486 F.2d 934, 938 (7th Cir. 1973) (Bulk Sales Provisions authorizing IDOR to issue stop order "does not purport to vest ownership of the held fund in the State.")). Second, the right afforded to IDOR under the Bulk Sales Provisions remains subject to the priority scheme of the Bankruptcy Code. Elk Grove IV, 562 B.R. at 717 (Under section 363(p)(2), IDOR bears the burden of establishing its priority in the Segregated Proceeds as an "entity asserting an interest").

B.      The Nature, Extent and Priority of the IRS and State of Illinois Claims

1.      *The Nature of the IRS and State of Illinois Claims*

Aside from the extraordinary relief available under section 506(c), the highest priority claim in bankruptcy is afforded to secured claims. While bankruptcy is essentially an *in personam*

mechanism, "claims include *in rem* claims as against property of the estate, not just *in personam* claims against the debtor." *In re Woodruff*, 600 B.R. 616, 627 (Bankr. N.D. Ill. 2019) (Barnes, J.); *see also Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) (claims in bankruptcy include claims against property even where the *in personam* claim against the debtor was discharged).

Secured claims of equal priority cannot avail themselves any guidance in the Bankruptcy Code, and so state law answers which secured claim has a higher priority, but beyond secured claims, section 507 of the Bankruptcy Code governs the priority of unsecured claims in bankruptcy.  11 U.S.C. § 507.

With that framework in mind, the court considers the IRS and State of Illinois claims, beginning with the IRS.

> (a)      The IRS Claim

The IRS has filed several claims in this case.  *See* Official Form 410 of Internal Revenue Service, dated February 15, 2019 [Claim No. 6–1, as amended on January 7, 2020].  An examination of such claims demonstrates that they are for unpaid taxes, which results in the IRS Claim being entitled to treatment as an unsecured priority claim under section 507 of the Bankruptcy Code.  *See* 11 U.S.C. § 507(a)(8) (affording a priority to the unsecured claims of governmental units based on taxes).

As noted above, however, the IRS had not just submitted the IRS Claim as a priority, unsecured claim, but has also asserted secured status for its claim.  The basis of that assertion is that the IRS holds nine recorded tax liens against the Debtor filed on February 1, 2013; April 22, 2013; April 23, 2013; April 23, 2013; August 16, 2016; August 19, 2016; September 20, 2016; September 23, 2016; December 6, 2016; and December 14, 2016.  IRS Stmt. of Facts, at ¶ 10.  The liens secure taxes in the amount of $149,359.46, prepetition interest in the amount of $27,947.97 and prepetition penalties in the amount of $75,334.06.  Compl., at ¶ 11.  Each of these liens, as recorded against the Debtor, act as "a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to" the Debtor.  26 U.S.C. § 6321.  As noted above and discussed below, but for the funds segregated under the Sale Order, the Sale Order attached those liens to the Proceeds of the sale of those assets.  Sale Order, at ¶ 4.

But for the Segregated Proceeds, the IRS asserts and IDOR does not contest that the IRS's tax liens secure claims of up to $178,000.00.  IRS Stmt. of Facts, at ¶ 10; *see also* Official Form 410 of Internal Revenue Service, dated February 15, 2019 [Claim No. 6–1, as amended on January 7, 2020].

Section 506 of the Bankruptcy Code provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest … is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property … and is an unsecured claim to the extent that the value of such creditor's interest … is less than the amount of such allowed claim."  11 U.S.C. § 506(a).

As a result, there is no question that the IRS has both a priority, unsecured claim and a secured claim far in excess of the Proceeds as a whole.  11 U.S.C. § 506(a)(1).  Thus, but for the effect of the Sale Order, the IRS is entitled to judgment in its favor on Count I of the Complaint.

(b)   The State of Illinois Claim

The State of Illinois Claim is not so straightforward.

The State of Illinois has, as did the IRS, filed several proofs of claim in the bankruptcy case. *See* Official Forms 410 of Illinois Department of Revenue, dated April 18, 2019 [Claim No. 19–1; Claim No. 20-1, as amended on June 19, 2020; and Claim No. 21-1, as amended on June 19, 2020]. The Illinois Department of Employment Security has also filed claims in the case. *See* Official Form 410 of Illinois Department of Employment Security, dated January 2, 2019 [Claim No. 1–1]; Official Form 410 of Illinois Department of Employment Security, dated April 19, 2019 [Claim No. 22-1, as amended on July 2, 2020]. As with the IRS Claim, an examination of these claims demonstrates that they are for unpaid taxes, which results in the State of Illinois Claim being entitled to treatment as an unsecured priority claim under section 507 of the Bankruptcy Code. 11 U.S.C. § 507(a)(8).

While not substantiated in the proofs of claim themselves, the Complaint states that "[t]he State of Illinois has asserted a right to a portion of the proceeds of [the] sale of assets of the estate based upon a successor liability doctrine pursuant to so-called 'Bulk Sales Provisions' of the Illinois Consolidated Statutes, as discussed in [*Hanmi Bank*]." Compl., at ¶ 52.

The Bulk Sales Provisions are part of the greater Retailers' Occupation Tax Act and Illinois Income Tax Act. As noted above, the Bulk Sales Provisions of the Illinois Income Tax Act apply "[i]f *any taxpayer*, outside the usual course of his business, sells or transfers the major part" of specific types of assets. 35 ILCS 5/902(d). These Bulk Sales Provisions do not directly give rise to a lien, but instead do cause a purchaser to be personally liable for the obligation underlying a lien on assets purchased. 35 ILCS 5/902(d).

Under the Retailers' Occupation Tax Act, the State of Illinois is, conditions permitting, entitled to a lien against the assets of the seller/taxpayer. 35 ILCS 120/5a. Such liens are not, however, higher in priority to other types of liens. *See* 35 ILCS 120/5a ("Nothing in this Section shall be construed to give the Department a preference over the rights of any *bona fide* purchaser, holder of a security interest, mechanics lienholder, mortgagee, or judgment lien creditor arising prior to the filing of a regular notice of lien …"); 35 ILCS 5/1103(a) (same). "As such, Illinois law … provid[es] that liens are prioritized in relative priority of the date of perfection, with the first in time being afforded the first right to the underlying assets. *Cf.* UCC § 9-322(a)(1) ('Conflicting perfected security interests … rank according to priority in time of filing or perfection.'); 810 ILCS 5/9-322(a)(1) (same)." Elk Grove I, 510 B.R. at 602.

Examining the State of Illinois's proofs of claim, the court notes that none of the claims assert secured status. Instead, each claim rests solely on the priority for taxes set forth in the Bankruptcy Code. 11 U.S.C. § 507(a)(8). To ensure its treatment as a secured creditor in a bankruptcy case, a creditor must assert a claim as such by the deadline under Bankruptcy Rule 3002(c). *In re Pajian*, 785 F.3d 1161, 1165 (7th Cir. 2015) ("The deadline for filing a proof of claim in Federal Rule of Bankruptcy Procedure 3002(c) applies to *all* claims, including those of secured creditors."). Further, IDOR has indicated that the Illinois Department of Employment Security's *de minimus* claim has been waived. IDOR Stmt. of Facts, at ¶ 15.

In short, the State of Illinois has not established that it is entitled to be treated as a secured creditor in this case. As such, the court need not consider whether the State of Illinois has a lien

14

arising directly out of either of the Illinois Income Tax Act or the Retailers' Occupation Tax Act. Prior to the application of any overriding bankruptcy principles, then, the State of Illinois has at most the unsecured claims it has asserted against the Debtor, with such claims being afforded a priority in bankruptcy under section 507 of the Bankruptcy Code.  11 U.S.C. § 507(a)(8).

2.      *The State of Illinois Claim also Has an "Interest" in the Estate Assets Sold*

This is not the end of the inquiry, however.

Even though the State of Illinois has asserted no lien claim arising directly from the Illinois Income Tax Act or the Retailers' Occupation Tax Act and thus, for these purposes, has no such secured claim, it does argue that the provisions of section 363(e) of the Bankruptcy Code and the express language of the Sale Order give it something akin to a lien—a superior right to the Segregated Proceeds.

As noted above, the court assumes the application of the Bulk Sales Provisions.  Under the Bulk Sales Provisions, the State of Illinois is entitled to assert *in personam* liability against purchasers for taxes unpaid by the seller of its own assets.  *Compare* 35 ILCS 5/902(d) ("the purchaser or transferee shall be personally liable to the Department for the amount owed hereunder by the seller or transferor but unpaid, up to the amount of the reasonable value of the property acquired by the purchaser or transferee") *with* 35 ILCS 5/902(d) ("the purchaser or transferee shall be personally liable for the amount owed hereunder by the seller or transferor to the Department up to the amount of the reasonable value of the property acquired by the purchaser or transferee").

In *Elk Grove*, the court determined that such a right is in the nature of an interest, Elk Grove I, 510 B.R. at 602–04, and the stripping of such a right in a sale under section 363(f) of the Bankruptcy Code results in the State of Illinois being entitled to request adequate protection for that interest under section 363(e) of the Bankruptcy Code.  *Id.* at 603–05.

The IRS argues instead that IDOR's ability to impose successor liability is not an "interest" and asks the court to reverse its prior holding that the Bulk Sales Provisions do give IDOR an interest.  *Id.* at 603–04.

The Bankruptcy Code does not define the term "interest" as used in section 363(f). However, this court has previously said the following on this issue:

> [C]ourts have generally concluded that the term should be applied broadly.  *See Precision Indus., Inc. v. Qualitech Steel SBQ, LLC,* 327 F.3d 537, 545 (7th Cir. 2003) (holding that a possessory interest by a lessee is an "interest" for purposes of section 363(f)); *see also In re Trans World Airlines, Inc.,* 322 F.3d 283, 289 (3rd Cir. 2003) (concluding that employment-related claims are an "interest"); *In re Leckie Smokeless Coal Co.,* 99 F.3d 573, 586–87 (4th Cir. 1996) (holding that employer-sponsored benefit plans are an "interest").  As the Seventh Circuit has stated, "the Code itself does not suggest that 'interest' should be understood in a special or narrow sense; on the contrary, the use of the term 'any' counsels in favor of a broad interpretation." *Precision Indus.,* 327 F.3d at 545 (*citing United States v. Gonzales,* 520 U.S. 1, 5 (1997)).

Elk Grove I, 510 B.R. at 603.

15

In considering whether IDOR could assert an interest under the Bulk Sales Provisions and section 363(e) of the Bankruptcy Code, the court relied in part on the analysis of Judge Lynch, who had prior occasion to address the question. *In re Vista Mktg. Grp. Ltd.*, Case No. 12−B−83168, 2014 WL 1330112, (Bankr. N.D. Ill. Mar. 28. 2014) (holding that IDOR's ability to assert successor liability under Bulk Sales Provisions is an interest). The court also considered that if an interest qualified for treatment under section 363(f), it should by the same token be entitled to seek relief under section 363(e). Elk Grove I, 510 B.R. at 604.

As a result, the court concluded that IDOR had, "at the very least, an inchoate interest in the assets in question, as it would not be assertable against the purchaser had the transfer of the assets not occurred." *Id.* at 603. On appeal, the District Court agreed with the Bankruptcy Court "that IDOR has a valuable interest under bankruptcy law." Elk Grove III, 2015 WL 8481961, at *3.

The Seventh Circuit did not independently consider this issue, stating that, because the issue was not contested on appeal, it "assume[d] without deciding that IDOR's authority to impose successor liability … constitutes a cognizable 'interest' in a debtor's property for purposes of section 363." *Hanmi Bank*, 895 F.3d at 473–74.

Despite this, the IRS has not offered a compelling argument that persuades the court it must reverse its prior holding. IDOR's right to assert successor liability under the Bulk Sales Provisions is an interest, and for the reasons stated in Elk Grove I, that interest is entitled to seek adequate protection under section 363(e).[9]

Whether IDOR has an interest entitled to adequate protection is merely the start of the court's inquiry with respect to the treatment of the State of Illinois's interest, however.

One lingering problem for IDOR is that Illinois law does not afford its inchoate successor liability claim a preference over holders of security interests. 35 ILCS 120/5a ("Nothing in this Section shall be construed to give the Department a preference over the rights of any *bona fide* purchaser, holder of a security interest, mechanics lienholder, mortgagee, or judgment lien creditor arising prior to the filing of a regular notice of lien …"); 35 ILCS 5/1103(a) (same). As this court took up the issue on remand in *Elk Grove*, it determined that while IDOR might assert a claim under section 363(e), it must show in the context of adequate protection that the claim it sought to protect had something other than mere speculative recovery. Elk Grove IV, 562 B.R. at 717–22. It determined that, had the sale not taken place under section 363(f), the superior lien claims of the bank would continue to be superior to those asserted by IDOR, and further that IDOR had not shown that it had any reasonable recovery against the purchaser that would not, under the priority laws applicable outside of bankruptcy, have gone first to satisfy the superior claims. *Id.*

---

[9]      Section 363(e) provides, in part, that:

> Notwithstanding any other provision of this section at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, *the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.*

11 U.S.C. § 363(e) (emphasis added).

16

Another problem for the State of Illinois might be how such an inchoate interest potentially holds up against the Trustee's status as a hypothetical lien creditor. *See* 11 U.S.C. § 544(a). As the parties have not briefed this issue, the court declines to address it here.

In either case, an interest in the assets is only as good as the underlying claim. A secured creditor with a lien, for example, cannot collect on that lien if the underlying debt is invalid. As a result, the court must consider what it has not yet considered in this matter, whether the State of Illinois is entitled to adequate protection of equal or higher priority than other creditors with an interest in the assets. That means looking again to *Hanmi Bank*.

3.      *The State of Illinois Has Failed to Meet the Standards of Elk Grove and Hanmi Bank*

On crossing motions for summary judgment, IDOR bears the burden on its own motion. *Watkins Motor Lines*, 553 F.3d at 596; *Salas*, 493 F.3d at 921–22. On the underlying question of adequate protection, IDOR also bears the burden of establishing not just the validity, priority and extent of its claimed interest under section 363(p)(2), but also the validity of its claim both under sections 301 and 506. This is not a question of whether protection is adequate, which falls on the trustee. 11 U.S.C. § 363(p)(1). As this court observed in *Elk Grove*, adequate protection has already been provided with replacement liens in the assets. Elk Grove IV, 562 B.R. at 716. Replacement liens are

> exactly what was contemplated by Congress in such matters, when it stated that "[m]ost often, adequate protection in connection with a sale free and clear of other interests will be to have those interests attach to the proceeds of the sale." H.R. Rep. No. 595, 95th Cong., 1st Sess. 345 (1977), S. Rep. No. 95–989, 95th Cong., 2d Sess. 56 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6302; *see also* 3 Collier on Bankruptcy ¶ 363.06[9] at pp. 363–58 (16th ed. 2013).

*Id.*

As such, as in *Elk Grove*, adequate protection has been provided and the burden on that is inapplicable. Instead, the issue here is a determination of priority in interests in the property, the burden of which was borne by each party asserting such an interest on its own behalf. *Id.* In *Hanmi Bank*, the Seventh Circuit stated unequivocally that, "[a]s should be clear by now, we are placing the responsibility for the failure of proof as to the value of IDOR's interest on IDOR itself." *Id.* at 480.[10]

---

[10]     The Seventh Circuit does appear to question which party properly bore the underlying burden. *Id.* at 480. In so doing, it observed that the burdens of adequate protection under sections 361 and 363(p) of the Bankruptcy Code fall primarily on the debtor. This is, unquestionably, correct. But as in *Elk Grove*, the provision of adequate protection here has occurred. All the parties had carried their burdens with respect thereto. Instead, what remains is a simple question of allocating competing interests in the property. *Cf.* Elk Grove IV, 562 B.R. at 716–17 ("What remains is the issue of the validity, priority, or extent of the interests in question as they relate to the Proceeds. This is not a determination of adequate protection in and of itself, but, as is contemplated in section 363(p)(2), is something that must be determined appurtenant thereto. *Accord Nov. 2005 Land Inv'rs, LLC*, 636 Fed. Appx. at 725."). "[A] secured creditor generally bears the burden under section 506(a) of proving the amount and extent of its lien." *In re Sears Holdings Corp.*, 621 B.R. 563, 571 (S.D.N.Y. 2020).

17

Yet the factual record on which IDOR relies does nothing beyond what was done in *Elk Grove* to demonstrate any likelihood of recovery. By relying on these facts, IDOR has not furthered its claim to a priority in the assets in question.

To be clear, it appears to the court that IDOR has taken the wrong lesson from *Elk Grove* and *Hanmi Bank*. What the court made clear in *Elk Grove* is that, after the provision of adequate protection under section 363(e), if the protection that was provided must be valued against competing claims, it remains the burden of the claimant to demonstrate its entitlement to recovery on the protection vis-à-vis such competing claims.

In previous opinions, the court used terms of art common in the financial industry, but which may not be commonly understood by jurists and laypersons alike that are not well acquainted to financial market concepts. Specifically, in Elk Grove I, the court referred to IDOR's claim as being "out of the money." 510 B.R. at 605. The term "out of the money" is one used more frequently in securities and commodity futures options contract markets. Typically, the owner of an option has the right to buy or sell a security at a particular price on or before a particular date. An option contract can be either "in the money," "at the money," or "out of the money." SHELDON NATENBERG, OPTION VOLATILITY AND PRICING 6–8, (2d ed. 1994). All three terms refer to the intrinsic value of the option. *Id.* Any option which has a positive intrinsic value is said to be "in the money." *Id.* On the other hand, an option with no intrinsic value is said to be "out of the money." *Id.*

On the initial appeal, as a fault of this court not explaining its use, the District Court confused the meaning of "out of the money," stating that "IDOR was not 'out of the money.'" Elk Grove II, 541 B.R. at 681. "The District Court equated the use of the phrase 'out of the money' with a determination by this court that IDOR had no claim at all. It made this interpretation clear when it pointedly stated that IDOR's Successor Liability Interest had 'value.'" Elk Grove IV, 562 B.R. at 713–14. Because of this confusion, this court on remand crafted new terms to address the basic principle that it had intended to express. *Id.* at 714 ("When discussing the value of the Successor Liability Interest without regard to recovery, the court will use the term 'calculable value.' When discussing that calculable value as viewed through the lens of recovery, the court will use the term 'realizable value.'").

In using these new terms, the court faulted IDOR for providing no evidence as to what priority its interest in the proceeds in *Elk Grove* should be afforded. *See id.* at 720 n.11. As the court stated, "[n]othing in the Sale Order ensured IDOR a recovery on the preserved interests in the Proceeds. They must still be weighed against the priorities of all parties whose interests were also preserved …." *Id.* at 722. This court therefore restated its conclusion that "it is clear that the IDOR Claims, including the Successor Liability Interest, have no realizable value." *Id.* at 720. Put another way, IDOR failed to demonstrate that its claimed interest was "in the money."

On further appeal, the Seventh Circuit agreed, stating that

As there is no evidence as to what IDOR likely would have collected from the purchasers but for the bankruptcy court's section 363(f) free-and-clear orders, there is no way to determine what decrease in value the section 363(f) orders caused or what, if any, consideration the purchasers paid specifically to buy the properties free and clear of IDOR's interest under the Bulk Sales Provisions. No matter which

18

party bore the burden of proof on this point, the failure of proof precludes a meaningful assessment of the value of IDOR's interest. The bankruptcy courts therefore did not err in valuing IDOR's interest at zero for purposes of its right to adequate protection under section 363(e).

*Hanmi Bank*, 895 F.3d at 480–81.

Here is where IDOR seems to have, as noted earlier, taken the wrong lesson. Rather than take the clear direction from this court and the Seventh Circuit to shore up its evidentiary record, IDOR instead seems to focus on the court's statement that "[n]othing in the Sale Order ensured IDOR a recovery on the preserved interests in the Proceeds." Elk Grove IV, 562 B.R. at 722. Here, IDOR apparently attempts to direct the result by changing the language of the Sale Order. It has therefore failed to demonstrate a right as against the Proceeds other than one that might have been created by the Sale Order itself.

4.       *The Language of the Sale Order*

All of this begs the question of what change, if any, did the Sale Order make?

As noted above, it is clear that the Sale Order both intended to and did in fact remove all "liens, claims, interests and encumbrances" from the assets sold thereunder. Further, the Sale Order is unambiguous that those liens, claims, interests and encumbrances attached to a portion of the sale Proceeds, namely the Remaining Proceeds. Sale Order, at ¶ 4 ("all other liens on the Assets to attach to the remaining proceeds of the sale as provided by 11 U.S.C. § 363(f).").

What remains then is the effect of the prior provision of that same paragraph, which provides that the Trustee "shall designate and separate the sum of $33,563.76 from the sale proceeds for the full satisfaction of the successor liability claims that have been asserted by the Illinois Department of Revenue and the Illinois Department of Employment Security"—the so-called Segregated Proceeds. *Id.*

IDOR asserts that this provision gives rise to a claim by the State of Illinois against the Segregated Proceeds superior to all others as such funds were held for the benefit of the State. The IRS argues that, should this be true, the Sale Order overreaches and is invalid.

The court finds that IDOR's assumption is not supported by the plain language of the Sale Order itself. While that language limits the State of Illinois's recovery to the Segregated Proceeds and strips all prior superior claims to the same, it does not in and of itself deny other creditors the right to claim against the proceeds as would any creditor claim against unencumbered assets of the estate. Put another way, while IDOR is correct that the Segregated Proceeds were held for the benefit of the State of Illinois, it has not shown that the Segregated Proceeds were held for the *exclusive* benefit of the State of Illinois.

Begin with this:

The Seventh Circuit has made clear that trial courts unquestionably have the power to interpret their own orders. *Texas N. W. Ry. C. v. Atchison, Topeka & Santa Fe Ry. Co. (In re Chi. Rock Island & Pac. R.R. Co.)*, 860 F.2d 267, 272 (7th Cir. 1988) (explaining that the Seventh Circuit "give[s] deference to a court's interpretation of

19

its own orders."). The bankruptcy courts are no different. *In re Chi., Milwaukee, St. Paul, & Pac. R.R. Co.,* 882 F.2d 1188, 1193 (7th Cir. 1989) ("[The Seventh Circuit] give[s] great deference to a reorganization court's bankruptcy decisions because a reorganization court acts in equity."); *see also Ranch House of Orange-Brevard, Inc. v. Gluckstern (In re Ranch House of Orange-Brevard, Inc.),* 773 F.2d 1166, 1168 (11th Cir. 1985) ("The bankruptcy judge who has presided over the case from its inception is in the best position to clarify any apparent inconsistencies in the court's rulings.").

*In re Class A Properties Five, LLC,* 600 B.R. 27, 33 (Bankr. N.D. Ill. 2019) (Barnes, J.)

As this court stated,

> The court has a duty to adopt the meaning that "renders [the Dismissal Order] more reasonable, effective and conclusive in the light of the facts and the law of the case." *Hendrie v. Lowmaster,* 152 F.2d 83, 85 (6th Cir. 1945). The meaning "must be determined by what preceded [the order] and what it was intended to execute." *Id. (citing Union Pac. R.R. Co. v. Mason City & Fort Dodge R.R. Co.,* 222 U.S. 237, 247 (1911)). Additionally, when a court determines an order is ambiguous, the court "must construe [the order's] meaning, and in so doing may resort to the record upon which the judgment was based." *Spearman v. J & S Farms, Inc.,* 755 F. Supp. 137, 140 (D. S.C. 1990).

*Id.* at 35.

Here, there is no true record upon which the Sale Order was based. There was no objection of record to be resolved, nor a presentation to the court at the time the Sale Order was presented to illustrate any of the parties' intent with respect thereto. True, IDOR and the Trustee have each now averred to their intent, but that cannot constitute the intent of the court in entering the Sale Order. It is, after all, the court's order once signed.

As for that intent, the court could not by definition have possessed the intent to act outside of its authority, to deny a party its rights without due process, or to elevate one party's claim over another's without cause and a full hearing thereon. Thus, the court could not have intended to grant the State of Illinois a superior claim to the Segregated Proceeds, as doing so would have done all three of those things.

The only interpretation of the Sale Order's language that is therefore consistent with the actual language and which does not run afoul of the foregoing is that (i) the Segregated Proceeds are devoid of superior claims against them—something that was clearly within the court's ability to do as the motion underlying the Sale Order sought just that, *see* Motion for Authority to Sell Certain Assets Free and Clear of Liens Pursuant to 11 U.S.C. § 363(b) and (f), and to Shorten Notice [Dkt. No. 21] (the "Sale Motion"), and (ii) any objection of the State of Illinois be resolved by affording the State of Illinois nothing more than it was entitled to, replacement interests of the same nature, priority and validity and subject to the same defenses as its claimed interests in the assets themselves.

The Sale Order does more than that. It limits the State of Illinois to the Segregated Proceeds. That is something the State of Illinois could do of its own behest, and thus, it is not an overreach for the Sale Order to limit IDOR's entitlement at IDOR's request. That language is valid.

20

The Sale Order also strips the IRS's lien against the assets without granting the IRS full replacement liens under section 363(e) and (f). That is beyond what was sought in the Sale Motion and is the subject of the Motion to Vacate. Therefore, the court will not speak to that here.

In short, therefore, the Segregated Proceeds were first freed from the claims of all secured creditors by the express language of the Sale Order. They were next available to satisfy the State of Illinois and other creditors' claims in general.

Had the State of Illinois shown a superior right to recovery in keeping with *Hanmi Bank*, it may have taken against those funds prior to other creditors. It did not. Absent more, it would be nonsense to conclude that the State of Illinois somehow bootstrapped inferior claims into superior ones by virtue of language granting it adequate protection. Adequate protection is a shield, not a sword. As the Sale Order could have done nothing more than protect a superior right should one exist—the existence of which the State of Illinois declined to show by ignoring the dictates of *Hanmi Bank*—the Sale Order did not and could not create what the State of Illinois did not otherwise have. As a result, the Segregated Proceeds are not subject to any claims of secured interest holders and are generally available for the Trustee to distribute.

What remains then is the use of the estate funds by the Trustee under section 726 of the Bankruptcy Code.

C.      Administrative Expense Claims & Partial Summary Judgment

In the IDOR Motion, IDOR reserved argument on the issue of the Trustee's ability to subordinate tax liens to administrative expense claims. *See supra* n. 2. The IRS made no reservation on this issue. The Complaint sought to determine the validity, priority and extent of liens pursuant only to section 506(a). Compl.; 11 U.S.C. § 506. None of the nine counts in the Complaint sought a determination on the priority of administrative claims. At the Hearing, the Trustee stated the reason for the Complaint was to determine liens, claims and interests. Tr. at p. 40, Aug. 31, 2020.

Consequently, a determination of administrative expense priority under section 724(b) is beyond the four corners of the Complaint. As a general matter, "[a]dministrative claims only grant creditors a priority over other unsecured creditors, not over secured creditors. 11 U.S.C. § 507(a)(1)." *Marriott Family Rests. v. Lunan Family Rests. (In re Lunan Family Rests.)*, 194 B.R. 429, 450 (Bankr. N.D. Ill. 1996) (Schmetterer, J.). But the Complaint does not permit the court to decide on the administrative claims priority because the Complaint was limited to the priority of liens of parties that had filed claims against the Debtor pursuant to section 506. *Intermet Realty P'ship v. First Pa. Bank N.A. (In re Intermet Realty P'ship)*, 26 B.R. 383, 386 (Bankr. E.D. Penn. 1983) (Court does not try issues of fact on motions for summary judgment; sole task is to determine whether any factual issues must be tried.).[11]

Further, at the hearing on January 11, 2021, the Trustee questioned how he might distribute the Segregated Proceeds in light of the ruling contained herein. While the court had made reference to the competing administrative claims of the State of Illinois and the IRS being of equal priority, it

---

[11]     At the Hearing, the Trustee speculated on the value of administrative claims, and his decision to surcharge them based on the amount. Tr. at p. 39, Aug. 31, 2020. It is unnecessary for the court to consider that speculation as it is beyond the scope of section 506.

likewise makes no determination here beyond what is necessary to resolve the section 506 complaint. The Trustee's statutory duties under section 726, and otherwise, are what they are and the court need not interfere with the estate's otherwise orderly distribution.

In sum, the court is bound to determine only the priority in the Proceeds of the claims of the defendants to the Complaint and the court has made such a determination. A determination on the administrative claims is not properly before the court.

CONCLUSION

Having considered the arguments of the parties, it is the conclusion of the court that there is not a genuine issue of material fact concerning the relative priority in the Proceeds other than as one might arise in determining the Motion to Vacate.

While IDOR presumptively has an interest that is entitled to adequate protection, IDOR has failed to show that such an interest should be prioritized over other creditors by failing to show its likelihood of realization in light of *Hanmi Bank*.

As to the Remaining Proceeds, the IRS has met the standards for summary judgment under Civil Rule 56, made applicable here by Bankruptcy Rule 7056, for judgment in its favor by demonstrating that it has a senior secured claim to the Proceeds of the section 363(f) sale of the Debtor's assets, which secured claim is senior in priority to the State of Illinois's inchoate interest in those same assets. That claim attached to the Remaining Proceeds in accordance with the Sale Order and thus entitles the IRS to claim as against those assets above all other creditors under section 725 of the Bankruptcy Code. 11 U.S.C. § 725.

As to the Segregated Proceeds, each of the IRS and IDOR has met the standards for summary judgment under Civil Rule 56 for partial judgment in its favor. The express terms of the Sale Order provide that the IRS's senior secured claim does not attach to the Segregated Proceeds, but nor does it attach an interest in favor of the State of Illinois to such proceeds. As such, the Sale Order does not prevent creditors from recovering as against such. The State of Illinois failed to demonstrate, as one of those creditors, a superior right under *Hanmi Bank*. Thus, under the Sale Order, the Segregated Proceeds are therefore available to satisfy the claims of all creditors.

Should the Sale Order's stripping of the IRS's lien against the Proceeds be vacated, the IRS will have met the standards for summary judgment under Civil Rule 56 for judgment in its favor by demonstrating that it has a senior secured claim to the Remaining Proceeds of the section 363(f) sale of the Debtor's assets, which secured claim is senior in priority to the State of Illinois's inchoate interest in those same assets.

As the result here turns on a motion yet to be resolved, the court holds judgment in this matter until the Motion to Vacate is heard and determined. Upon such a determination, judgment will be entered here concurrent with the court's determination of the Motion to Vacate. As such judgment will conclude all affirmative claims for relief in the adversary proceeding, the adversary proceeding will be concluded thereby.

By separate order entered current herewith, the court therefore orders each of the Motions will therefore be granted in part and denied in part.  Judgment will be held pending a determination of the Motion to Vacate.

Dated:  February 5, 2021                                  ENTERED:

 

_____

Timothy A. Barnes
United States Bankruptcy Judge